UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KHALIQ CLARK,

                                    Plaintiff,

                                                                       <u>DECISION AND ORDER</u>

                                                                         02-CV-6525L

                 v.

A. DANNHEIM,
DENNIS HARDY,
T. BRECKON,
DONALD SELSKY,
DAVID MATYAS,

                                    Defendants.
_____

       Plaintiff, Khaliq Clark, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects in connection with an altercation between plaintiff and three guards on May 3, 2001, and a subsequent hearing on the disciplinary charges brought against plaintiff as a result of that altercation.

       Defendants include the three correction officers involved in the May 3 incident–Andrew Dannheim, Dennis Hardy, and David Matyas–as well as the hearing officer on the disciplinary charges, Thomas Breckon, who found plaintiff guilty of the charges against him, and Donald Selsky, the DOCS Director of Special Housing, who denied plaintiff's appeal from Breckon's determination.

Defendants have moved for summary judgment. Plaintiff, who is represented by counsel, has filed a memorandum of law and other papers in opposition to the motion.[1] For the reasons that follow, defendants' motion is granted in part and denied in part.

**BACKGROUND**

The amended complaint (Dkt. #22) alleges that on May 3, 2001, plaintiff was summoned from his cell to the office of Sgt. Szczepanowski , who wished to speak to plaintiff concerning a letter that plaintiff had recently written to the facility superintendent complaining about certain matters. According to plaintiff, as he was leaving Szczepanowski's office following this interview, he was approached by Dannheim, who made some comments about why plaintiff had "writ[ten] that bullshit," *i.e.*, the letter to the superintendent. Dannheim then allegedly began punching plaintiff, and defendants Hardy and Matyas allegedly joined in the assault. Plaintiff was then taken to the Special Housing Unit ("SHU"), where he was treated for his injuries. Dkt. #22 ¶¶ 10-19.

The next day, plaintiff was issued a misbehavior report charging him with assault on staff, violent conduct, and harassment. A hearing was held on May 16 and 17, 2001, before defendant Breckon.

At one point in the hearing, plaintiff raised an objection to certain matters, which Breckon overruled. Plaintiff continued to pursue the objection, and Breckon had him removed, stating, "I'm

---

[1] Plaintiff commenced this lawsuit *pro se*. The Court subsequently appointed counsel for plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Dkt. #29.

not gonna put up with inmate Clark interrupting me while I'm trying to give him instructions." Dkt. #44 Ex. C at 10. The hearing then continued in plaintiff's absence.

At the conclusion of the hearing, Breckon found plaintiff guilty on all three charges, and sentenced him to twelve months' confinement in SHU and loss of certain privileges. Dkt. #41 Ex. D. Selsky affirmed that disposition on appeal.

Following the hearing and disposition, plaintiff commenced an Article 78 proceeding in New York State Supreme Court, Wyoming County, seeking to annul the hearing results on a number of grounds. On March 22, 2002, Acting Supreme Court Justice Mark H. Dadd issued a decision finding that "the record does not support the Hearing Officer's decision to exclude the petitioner from the hearing," and ordering "that a new hearing be held regarding petitioner's misbehavior report ...," within fourteen days of service of the court's order. Dkt. #41 Ex. C.

It appears, however, that no rehearing was ever held, at least to a conclusion. According to plaintiff, a rehearing was begun, but not within the fourteen days directed by Justice Dadd, and when plaintiff objected to the untimeliness of the hearing, the hearing was simply cancelled, and plaintiff was released from SHU after serving 295 days there. Dkt. #45 Ex. L.

Based on these allegations, plaintiff asserts several claims. First, he contends that the alleged assault on May 3, 2001 violated his Eighth Amendment right to be free from excessive force, and that it was initiated in retaliation for plaintiff's having complained about certain matters, in violation of his rights under the First Amendment.

Plaintiff also contends that his procedural due process rights were violated at the hearing before defendant Breckon. Plaintiff bases this claim on Breckon's denial of plaintiff's request for

Dannheim's medical records, his denial of plaintiff's request to call Sgt. Szczepanowski as a witness, and Breckon's exclusion of plaintiff from the hearing. Plaintiff's claim against Selsky is premised on Selsky's affirmance of Breckon's determination.

**DISCUSSION**

**I. Defendants' Motion**

Although on its face defendants' motion appears to seek summary judgment on the entire complaint, defendants' memorandum of law and other motion papers only address plaintiff's claims concerning Breckon's refusal to call Szczepanowski as a witness, and his denial of plaintiff's request for Dannheim's medical records.

A party seeking summary judgment bears the initial burden of demonstrating that there exist no genuine issues of material fact with respect to any of the claims at issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006); *McAlpin v. RLI Ins. Co.*, 509 F.Supp.2d 242, 245 (W.D.N.Y. 2007). Since defendants have not even addressed plaintiff's claims arising out of the alleged assault itself, or Breckon's removal of plaintiff from the disciplinary hearing, the Court construes defendants' motion as only relating to plaintiff's claims concerning the denial of plaintiff's request for Dannheim's medical records and his request to call Szczepanowski as a witness.

**II. Dannheim's Medical Records**

Before he was removed from the hearing, plaintiff requested that Dannheim's medical records from the aftermath of the May 3, 2001 incident be produced. Breckon responded, "You're not entitled to those," to which plaintiff replied, "[Dannheim's] saying I punched him in the mouth. He don't have no injuries or anything." Dkt. #45 Ex. C at 5. Breckon stated that he did not have Dannheim's medical records in front of him, but that Dannheim "did have some sort of injury," and he again denied plaintiff's request. *Id.*

In support of their summary judgment motion, defendants state that plaintiff conceded at his deposition in this action that "Dannheim's medical records would not have helped [plaintiff] at the hearing because the records showed that he had been injured." Defendants' Rule 56 Statement (Dkt. #40) ¶ 8. In response, plaintiff argues that although the records indicate that Dannheim did suffer some injuries, those injuries were consistent with plaintiff's allegation that Dannheim had punched him.

At plaintiff's deposition, defense counsel read into the record portions of Dannheim's medical report that was taken following the May 3 incident. That report stated, *inter alia*, that Dannheim had superficial lacerations on his hands and on his upper right arm, and that he complained of numbness in his lower lip. Dkt. #45 Ex. B at 27.

When asked at his deposition how he would have attempted to use this evidence if it had been produced at his disciplinary hearing (and had he not been removed from the hearing before Dannheim testified), plaintiff stated that he would have used it to corroborate his assertion that plaintiff "didn't injure [Breckon] basically." He added that he "doubt[ed] if the outcome [of the

hearing] would have been different, but that doesn't justify [Breckon] kicking [plaintiff] out of the hearing." *Id.* at 29.

To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Marino v. Humphrey*, Slip Copy, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006) ("Harmless error analysis applies to prison disciplinary hearings and requires factual assessment of the prejudice, if any, to the prisoner resulting from the error.  Courts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding") (footnotes omitted); *see also Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) ("a prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony would have affected the outcome of his case") (internal quotation marks omitted).

In the case at bar, I do not believe that plaintiff has demonstrated that he was prejudiced by Breckon's denial of plaintiff's request to review Dannheim's medical records.  Although the references to injuries to Dannheim's hands and arm may have been consistent with plaintiff's allegation that Dannheim punched him, the report also indicated that Dannheim complained of numbness in his lower lip, which tended to rebut plaintiff's assertion that he "didn't injure" Dannheim.  In any event, there was no real dispute that plaintiff and Dannheim were involved in a

physical altercation; the principal issue was who threw the first punch. Thus–as plaintiff himself conceded in his deposition testimony–Dannheim's medical report was unlikely to have affected the outcome of the disciplinary hearing, and plaintiff cannot show any prejudice in this regard.. *See*, *e.g.*, *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("even if [defendant's refusal to allow inmate to call officer as a witness] was error, Piggie has not established that he was prejudiced"); *Hernandez v. Selsky*, 572 F.Supp.2d 446, 454-55 (S.D.N.Y. 2008) (granting summary judgment for DOCS employee who was assigned to assist inmate at disciplinary hearings on inmate's due process claim based on defendant's failure to interview certain officers, since "the undisputed evidence in the record shows that plaintiff was not harmed by [defendant]'s decision not to seek interviews of the officers"); *Sims v. Artuz*, No. 96 Civ. 0216, 2003 WL 1746263, at *12 (S.D.N.Y. Mar. 31, 2003) ("Even assuming the reason provided by Connolly for denying plaintiff inmate Nelson as a witness is insufficient, or that other errors were made in terms of the denial of witnesses, as discussed below, such error did not prejudice plaintiff in terms of the outcome of the proceeding and was therefore harmless"), *aff'd in part, rev'd on other grounds in part*, 103 Fed.Appx. 434 (2d Cir. 2004)

**III. Refusal to Call Szczepanowski as a Witness**

In *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990) (per curiam), the Court of Appeals for the Second Circuit held that prison authorities may not refuse to interview an inmate's requested witnesses "without assigning a valid reason." The court added that when an official refuses to interview an inmate's requested witness, "[t]he burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of his position."

*Id.* at 478 (rejecting hearing officer's proffered reasons for refusing to interview inmate's witnesses, and noting that officer "had no reason to believe that the testimony of the two [witnesses] would be redundant"). *See also Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998) (stating that "[i]t is clear that [hearing officer] Ryan ... violated Ayers' due process rights by failing (without rational explanation) to obtain the testimony of the witnesses requested by Ayers during the disciplinary hearing").

Here, Breckon refused to call Szczepanowski as a witness on the ground that Szczepanowski "did not witness the actual act of misbehavior on [plaintiff's] part." Dkt. #44 Ex. C at 11, Ex. H. Breckon based that conclusion on the following colloquy between him and Dannheim, which took place after plaintiff had been removed from the hearing:

> Q. While that [altercation between plaintiff and Dannheim] was going on, did, was Sgt. [Szczepanowski] still in his office?
>
> A. He came out as soon as it happened.
>
> Q. He came out when it happened. He didn't actually see the incident?
>
> A. No. Not that I know of. I don't think he did.

Dkt. #44 Ex. C at 11.

Defendants contend that Breckon is entitled to summary judgment on this claim because "[t]he one witness that plaintiff requested that the hearing officer denied, Sgt. Szczepanowski did not witness the incident." Defendants' Mem. of Law (Dkt. #39) at 6. In response, plaintiff contends that it was improper for Breckon to conclude, based solely upon Dannheim's testimony that he "d[id]n't think" that Szczepanowski witnessed the incident, that in fact Szczepanowski had not seen it or that his testimony would be irrelevant.

- 8 -

Again, though, I conclude that plaintiff has failed to demonstrate that he was prejudiced in this regard. Even assuming, *arguendo*, that Breckon should have at least interviewed Szczepanowski himself to determine whether his testimony might be relevant, there is no indication or reason to believe that his testimony would have been helpful to plaintiff.

In support of his arguments in opposition to defendants' motion, plaintiff notes that Szczepanowski's report that he filed after the incident contains some suggestions that he might have seen at least some of what occurred. For example, in a May 3, 2001 memorandum to a Lt. Hendel, Szczepanowski stated that when plaintiff left his office after the interview on that date concerning plaintiff's prior complaint, plaintiff "punched [Dannheim] in the mouth with a closed right" and that "Dannheim immediately grabbed and pulled the inmates [sic] right hand." Dkt. #44 Ex. E. There is no indication that Szczepanowski was simply repeating what Dannheim or anyone else had told him, and it could reasonably be inferred from this report (which goes on to relate how plaintiff and the other officers fell down a flight of stairs, and continued struggling) that Szczepanowski was relating his own observations of what had occurred.

In addition, in a followup report dated May 18, 2001, Szczepanowski stated that he "personally witnessed [plaintiff and the other officers] trip on the stair and land in C-lobby ... ." Dkt. #44 Ex. D. Clearly, then, Szczepanowski saw at least some of what transpired between plaintiff and Dannheim, even if he did not see who committed the assault.

As with Dannheim's medical records, however, plaintiff cannot demonstrate any prejudice resulting from Breckon's failure to call or interview Szczepanowski. The only evidence in the record concerning Szczepanowski's recollection of the relevant events tends to support Dannheim's

- 9 -

assertion that plaintiff punched *him* without provocation.  There is also no basis in the record before me upon which to infer that, had Szczepanowski testified and had plaintiff been given the opportunity to question him, either directly or through Breckon, plaintiff could have demonstrated that Szczepanowski's narrative of the events was incorrect or not credible.  Defendants are therefore entitled to summary judgment on this claim as well.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #38) is granted in part and denied in part. Plaintiff's claims arising out of defendant Thomas Breckon's denial of plaintiff's request for defendant Dannheim's medical records, and Breckon's failure to interview or call Sgt. Szczepanowski as a witness are dismissed.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 1, 2008.